FILED

2024 Oct-30  AM 08:21
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **JEANETTA STRICKLAND** | ) |
| | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) Civil Action File No.: _____ |
| **v.** | ) |
| | ) **JURY TRIAL DEMANDED** |
| **VULCAN MATERIALS** | ) |
| **COMPANY, INC.,** | ) |
| | ) |
| **Defendant.** | ) |

## COMPLAINT

Plaintiff **Jeanetta Strickland** brings this civil rights action for relief and damages against Defendant **Vulcan Materials Company, Inc.,** based on the following factual allegations and causes of action.

## NATURE OF THE ACTION

1.      This action to correct unlawful employment practices by Vulcan Materials Company, Inc., ("Vulcan" or "Defendant") arises under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C.A. § 2000e-3(a); 42 U.S.C.A § 1981; and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C.A. § 623(a)(1).

2.     Plaintiff Jeanetta Strickland ("Strickland" or "Plaintiff") is an African-American woman over 60 years old. Strickland worked for Vulcan for approximately 28 years as a buyer and procurement specialist and excelled in her position, winning strong performance reviews and plaudits in the company for her effectiveness.

3.     In spite of her track record, Strickland was repeatedly passed over for management opportunities, typically without Vulcan permitting a competitive promotions process, in favor of less-qualified non-Black candidates.

4.     In 2023, after Strickland raised an internal complaint regarding her history of denied promotions and Vulcan's poor track record of promoting Blacks to senior-level roles, her fortunes took a sharp turn for the worse, culminating in her placement on a performance improvement plan and her eventual termination.

5.     Another factor in the demise of Strickland's career was an effort by senior leadership in late 2023 to purge the procurement department of late-middle-aged professionals whom certain members of the leadership team derided as having an "old way of thinking."

6.     To address Vulcan's rampant discriminatory and retaliatory practices, Strickland seeks economic damages of back pay, front pay, lost benefits, and liquidated damages under the ADEA. Additionally, Strickland seeks compensatory

damages for emotional distress and mental anguish under Title VII and § 1981, as well as her attorneys' fees and costs of litigation.

## THE PARTIES

7.    Plaintiff Strickland is a resident of Jefferson County, Alabama, and at all times relevant to this complaint was employed by Vulcan at its corporate headquarters in Birmingham.

8.    Defendant Vulcan is an entity subject to suit under Title VII, § 1981, and the ADEA.

## PERSONAL JURISDICTION

9.    Vulcan can be served through its registered agent on file with the Alabama Secretary of State, CT Corporation System, 2 North Jackson St., Suite 605, Montgomery, AL 36104.

## SUBJECT MATTER JURISDICTION AND VENUE

10.    Jurisdiction of this court is invoked pursuant to 28 U.S.C.A. §§ 1331 and 1343.

11.    Venue is proper in this district and division under 28 U.S.C.A. § 1391(b)(1)-(2), as Defendant resides in and conducts business in this district and

division and the acts or omissions giving rise to the claim occurred in the same venue.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

12.     Strickland filed a charge of discrimination and retaliation under Title VII and an age discrimination charge against Vulcan with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 420-2024-02963, on May 7, 2024. A copy is attached as Exhibit A.

13.     Strickland subsequently received a right-to-sue letter from the EEOC on July 31, 2024. A copy is attached as Exhibit B.

## FACTUAL ALLEGATIONS

14.     Vulcan is one of the leading construction materials companies in North America. The company mines and produces high-value ingredients such as asphalt and ready-mix concrete that are used to build infrastructure and to construct residential and commercial properties nationwide.

15.     For over 65 years, Vulcan has been a central participant in Birmingham's civic and economic life. It has promoted itself as a champion of racially diverse leadership in the Jefferson County metropolitan area and has been a substantial donor to Birmingham's venerable civil rights institutions.

**Vulcan's glass ceiling for Black applicants for promotion**

16.     In spite of its inclusive brand, Vulcan has an exceptionally poor record of hiring Black executives or elevating Blacks within the company to management-level roles. One of its 25 corporate officers is Black, and that individual holds a Human Resources position. As of at least the first quarter of 2024, not a single one of Vulcan's 20 to 25 director-level roles was held by Blacks, and less than 2% of its managerial force of 200 to 250 employees is Black.

17.     It is common practice at Vulcan that promotional opportunities are preselected. Jobs are often known to be available but never openly posted, or are promptly withdrawn after posting, meaning that there is limited transparency of the candidate pool. When jobs are posted, applicants are often pointedly told that there is a candidate decision-makers already have in mind.

18.     Strickland joined Vulcan in 1995 and worked for the company until March 2024. For most of that time, she served as a buyer and procurement specialist, and in 2021, Strickland was designated a sourcing specialist for the Southern Gulf Coast ("SGC") region, which encompasses Alabama, Louisiana, and Mississippi. In that role, she was a pivotal figure in the coordination of procurement efforts in the region.

19.     Strickland repeatedly sought to climb the ranks to a management position. Between 2015 and the spring of 2023, she sought positions as Southeast

Division Procurement Manager (2015), Plant Administration Support Manager (2016), Procurement Support Center Manager (2021), Southwest Division Procurement Operations Support Team ("POST") Manager (2022), and SGC/Central Region POST manager (2023).

20.     Strickland was passed over for each opening, each time for a White or a non-African American candidate, and each time for a candidate with less-extensive experience at Vulcan or fewer job-specific credentials than Strickland.

21.     In keeping with Vulcan's practice, the majority of the positions Strickland sought were never actually posted, but in each instance, she made her interest known to senior leadership or openly inquired about the role.

22.     In early 2023, Strickland's fifth bid for a promotion was derailed when she sought to fill the vacant SGC/Central POST manager slot.

23.     Just six months earlier, Strickland had won a company award for providing outstanding support for the SGC region and had served as the de facto interim manager during the vacancy. But rather than elevate Strickland, Vulcan transferred a fixed-assets manager, Jeff Chisolm, to the position, although Chisolm had initially expressed no interest in the opening.

24.     Strickland's experience with the region and the full spectrum of the procurement process contrasted with that of Chisolm's, whose previous portfolio

6

focused on one subcategory of construction material, and who had no meaningful history with the procurement team in the SGC region. Chisolm is White.

25.    Despite her failure to be selected, in February or March 2023, Strickland was initially told by company officials that she had been a strong finalist for the SGC/Central POST manager position and that the intent was to split the region in half, with Strickland managing one of the regions. She was also given a new title of sourcing lead.

**Strickland's career at Vulcan falters**

26.    But as Strickland seemed poised to finally ascend to management, her fortunes at Vulcan began to sharply turn.

27.    Jeff Chisolm, the SGC/Central manager who had been selected over Strickland, immediately began to find fault with her performance, counseling Strickland for lagging behind on timeliness of projects.

28.    Chisholm also made a point of telling Strickland that he didnot envision her in a management role.

29.    In early June 2023, Strickland was assigned by Thiabo Simoes, the director for the region that includes SGC/Central, to conduct an on-site briefing of managers on the status of procurement operations in Alabama.

30.    While Strickland welcomed the assignment, she learned in mid-June that Simoes and Chisolm had their own agenda. Chisholm replied to Simoes on an

email thread—on which he failed to notice that Strickland had been copied—that he thought the presentation would "expose" Strickland in front of senior leaders.

31.    Within days, Strickland reported the email thread to Senior Vice President and Chief Human Resources Officer ("CHRO") Darren Hicks and raised additional concerns to Hicks about the climate at Vulcan. She discussed the dearth of Blacks at the management level and Chisolm's statement that he did not believe Strickland was manager material.

32.    In September 2023, as Strickland had been told would happen, a separate South region was created. But instead of the inside track that had been promised to Strickland in the spring, she was passed over for another White candidate, Tom Price.

33.    Price, who like Strickland was a sourcing lead, had less than a year's experience at Vulcan, and his role at Coca-Cola involved a fundamentally different model of product acquisition. It is rare for Vulcan to elevate a candidate to management without a multiyear history with the company.

34.    As is often the pattern at Vulcan, the new South region position was never posted.

35.    Less than a month later, on October 10, 2023, Simoes informed Strickland that he was dissatisfied with her work and that he no longer saw her as a "good fit" for his team.

36.     On October 13, 2023, Chisholm told Strickland that she and a number of "older" employees in the procurement division who were in late middle-age were increasingly viewed as expendable and that they shared an "old way of thinking." Chisholm pointedly told Strickland that Vulcan was bent on eliminating the jobs of many of these individuals—including her.

37.     Strickland reported Chisolm's comments to CHRO Hicks the next day by email. Despite the fact that a manager had openly espoused a theory of targeting employees based on age—a blatantly illegal strategy—Hicks took no action.

38.     By mid-November 2023, Strickland's responsibilities began to diminish. Her role started to be limited to the Birmingham metro area, and she was excluded from regional meetings and email circulations in which she had previously participated, including a pivotal strategic planning session set for the spring of 2024.

39.     On January 8, 2024, Strickland was placed on a 60-day performance improvement plan.

40.     In February 2024, Chisholm listed Strickland's source lead job as vacant on an organizational flow charge, which led to rampant speculation by her peers that she had been fired or demoted.

41.     During February 2024, Strickland made her third complaint in the previous nine months to CHRO Hicks. She alleged to Hicks that her career at

Vulcan had been sabotaged since her efforts at promotion in 2023 had failed and that she had been subjected to reprisals after her complaints in the summer and fall of 2023. There is no indication that any of Strickland's concerns were ever investigated, which was in violation of Vulcan's policy that discrimination and retaliation complaints are to be investigated.

42.    On March 25, 2024, Strickland was terminated by Chisolm and HR Director Nicole Oliver on the vague grounds that she was "no longer working out." Her request that she be allowed to transfer to another division was also denied.

43.    The unraveling of Strickland's fortunes at Vulcan was not related to her performance. Instead, it reflects a combination of unlawful factors, including a biased promotional culture that reinforces the company's overwhelmingly White leadership ranks, a mindset that older middle-aged employees are past their prime, and an indifference toward internal complaints of discrimination even when they identify clear-cut violations of federal law.

44.    Strickland's termination has devastated her career and economic status and left her with no viable prospect of comparable employment. The loss of her career has also resulted in emotional distress, mental anguish, and humiliation.

## <u>COUNT I</u>

**(Retaliatory hostile environment in violation of Title VII, 42 U.S.C.A. § 2000e-3(a))**

45.    Plaintiff Strickland incorporates by reference paragraphs 1–44 of this complaint as though set forth fully and separately herein.

46.    Plaintiff engaged in statutorily protected activity under Title VII by making internal complaints of racially discriminatory promotional practices in or about June 2023.

47.    Because of her complaints of discrimination, Strickland was subjected to a series of retaliatory adverse actions by Vulcan, including but not limited to a denial of a promotional opportunity in September 2023, a reduction in the scope of her job responsibilities, a failure to investigate her repeated complaints of discrimination, placement on a performance improvement plan and her eventual termination.

48.    Vulcan's conduct, taken collectively and in tandem, would have dissuaded a reasonable employee from making or supporting a charge of discrimination, therefore constituting a retaliatory hostile environment under Title VII.

49.    As a result of the retaliatory hostile environment to which she was subjected by Vulcan, Strickland has suffered noneconomic damages including emotional distress, humiliation, embarrassment, and mental anguish, and due to her

denial of a promotion and eventual termination, she further sustained monetary damages, including but not limited to back pay and front pay as well as loss of economic opportunity and future benefits.

## COUNT II

**(Retaliatory hostile environment in violation of 42 U.S.C.A. § 1981)**

50.    Plaintiff Strickland incorporates by reference paragraphs 1–44 of this complaint as though set forth fully and separately herein.

51.    Plaintiff engaged in statutorily protected activity under §1981 by making internal complaints of racially discriminatory promotional practices in or about June 2023.

52.    Because of her complaints of race discrimination, Strickland was subjected to a series of retaliatory adverse actions by Vulcan, including but not limited to a denial of a promotional opportunity, a reduction in the scope of her job responsibilities, a failure to investigate her complaints of discrimination, placement on a performance improvement plan and her eventual termination.

53.    Vulcan's conduct, taken collectively and in tandem, would have dissuaded a reasonable employee from making or supporting a charge of discrimination, therefore constituting a retaliatory hostile environment under §1981.

54.    As a result of the retaliatory hostile environment to which she was subjected by Vulcan, Plaintiff Strickland has suffered noneconomic damages

including emotional distress, humiliation, embarrassment, and mental anguish, and due to her denial of a promotion and eventual termination, she further sustained monetary damages, including but not limited to back pay and front pay as well as loss of economic opportunity and future benefits.

## COUNT III

### (Discriminatory termination in violation of the Age Discrimination in Employment Act, 29 U.S.C.A § 623(a)(1))

55.     Plaintiff Strickland incorporates by reference paragraphs 1–44 of this complaint as though set forth fully and separately herein.

56.     At the time of her termination, Strickland was over 60 years of age.

57.     Strickland's age was a but-for cause of her termination, in that Vulcan embarked on a plan to reduce the ranks of certain older employees.

58.     As a result of Vulcan's age-based discrimination, Strickland has suffered monetary damages, including but not limited to back pay and front pay and loss of economic opportunity and future benefits.

59.     Because Vulcan's discriminatory conduct toward Strickland reflects a willful violation of the protections of the ADEA, she is further entitled to liquidated damages.

## COUNT IV

**(Failure to promote in violation of 42 U.S.C.A. § 1981)**

60.     Plaintiff Strickland incorporates by reference paragraphs 1–44 of this complaint as though set forth fully and separately herein.

61.     In 2023, Strickland was denied promotion to two managerial positions in the procurement department for which she was well qualified based on her experience and longevity with Vulcan.

62.     In both instances, candidates of a race different from Strickland's were selected, although they were less qualified based on their credentials.

63.     Vulcan has consistently practiced a nontransparent promotional process that has had the effect of systematically disadvantaging aspiring Black candidates.

64.     But for Plaintiff's race, she would have been promoted to either or both of the aforementioned managerial positions.

65.     As a result of Vulcan's discriminatory conduct, Strickland sustained monetary damages, including but not limited to back pay and front pay, loss of economic opportunity, and future benefits and non-economic compensatory damages.

## **PRAYER FOR RELIEF**

Wherefore, based on the above-stated claims, Plaintiff demands a trial by jury and that the following relief be granted:

A. Back pay, front pay, and lost benefits.

B. Compensatory damages to the extent allowed by law under Title VII and § 1981.

C. Liquidated damages under the ADEA.

D. Attorneys' fees and costs of litigation.

E. Prejudgment and post-judgment interest at the highest lawful rate.

F. Such other equitable and monetary relief as the court deems just and proper.

G. A declaratory judgment that Defendant's actions violated Plaintiff's statutory rights and that Defendant must refrain from future unlawful discriminatory and retaliatory conduct in its employment practices.

Respectfully submitted the 29th day of October 2024.

**HKM Employment Attorneys LLP**

*s/Artur Davis*
Artur Davis
ASB-3672-D56A
2024 3rd Ave. North, Suite 212
Birmingham, AL 35203
Direct: 205-881-0935
adavis@hkm.com

15

Jerilyn Gardner[1]
Georgia Bar No. 139779
3344 Peachtree Rd. NE, Suite 800

Office #35
Atlanta, GA 30326
Direct: 404-446-9544
jgardner@hkm.com

**Counsels for Plaintiff Jeanetta Strickland**

---

[1] Jerilyn Gardner will promptly file for admission *pro hac vice* as an attorney of record in this action. Ms. Gardner is licensed in the state of Georgia.